IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KEITH GELUMBAUKSKAS,  *
                      *
                      *
      v.              *   Case No.: 1:09-cv-00890
                      *
                      *
USG CORPORATION RETIREMENT *
PLAN PENSION AND INVESTMENT *
COMMITTEE             *
                      *
                      *
                    *****

MEMORANDUM

On April 9, 2009, Plaintiff Keith Gelumbauskas ("Plaintiff") filed suit under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, challenging the denial of disability benefits by Defendant USG Corporation ("USG").[1] Now pending before the Court are USG's Motion for Summary Judgment, and Plaintiff's Cross Motion for Summary Judgment, or in the alternative, Motion to Remand. For the reasons that follow, I will grant the Plaintiff's Motion to Remand.

I.   **Factual Background**

Plaintiff claims that since July 2007, complications from lower back surgery and multiple knee surgeries have rendered him unable to work. (Pl.'s Cross Mot. for Summ. J. ("Pl.'s Mem."))

---

[1] The USG Plan is governed by ERISA. *See* 29 U.S.C. § 1003. Under section 502(a)(1)(B) of ERISA, a "civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

1

at 2.) A letter from Dr. Berkenblit, Plaintiff's treating physician, dated April 9, 2008 outlines the history of problems with Plaintiff's knee:

1) Primary total knee replacement in 2002;
2) February 20, 2007 revision of the tibial and patellar components of Plaintiff's total knee prosthesis
3) July 19, 2007, surgery for peroneal never decompression
4) August, 2007 complaints of diffuse pain in the knee worse with weigh bearing. Plaintiff underwent workup for infection.
5) August 31, 2007 removal of prosthesis and implantation of a cement spacer; active infection detected
6) November 1, 2007 repeat washout of the knee and continuation on antibiotics due to persistent and ongoing infection
7) December 20, 2007 re-implantation of knee prosthesis
8) January 18, 2008 post operative course complicated by large prepatellar hematoma requiring washout
9) As of April, 2008 Plaintiff had developed a recurrent draining seroma and was undergoing a workup.

(USG Mot. for Summ. J. ("USG's Mem."), Ex. A. at 199-200).

On May 1, 2008, Plaintiff filed an application for disability benefits with USG under his employee disability plan ("the Plan"). In his application Plaintiff cited the following factors: "cannot bend, crutches when walking, no prolonged walking, standing, sitting." (*Id*. at 197).

The Plan defines total and permanent disability as follows:

> The participant is unable to engage in any substantially gainful activity by a reason of a medically determinable physical or mental disability which has existed for 6 continuous months and which can be reasonably expected to continue for at least 60 additional months . . . The Committee shall have the responsibility for determining whether a participant has incurred a total and permanent disability and, before approving payment of any disability retirement income, may require reasonable proof of such disability.

(*Id.* at 40.) The initial review of Plaintiff's application was conducted by Dr. Shirley Conibear on May 19, 2008. Dr. Conibear concluded that Plaintiff's disability did not qualify him for permanent disability benefits because he remained under medical treatment and was "still in the rehabilitation phase according to a letter from Dr. Berkenblit." (*Id.* at 331.) USG concluded that

there was insufficient evidence Plaintiff's condition would last for the requisite 60 months and denied his claim on May 28, 2008 ("Initial Denial").

On September 10, 2008, Plaintiff requested an appeal. The only additional information Plaintiff submitted on appeal was an updated letter from his treating physician, Dr. Berkenblit, stating:

> [A]t present, the patient does have persistent and chronic pain in the knee . . . I am not sure that further revision surgery would significantly improve his pain or range of motion . . . I do not think he will gain significant improvement in his chronic pain and stiffness . . . I would expect this to be an ongoing and chronic problem for him . . . thus . . . he certainly should be eligible for permanent disability.

(*Id*. at 339-40.) Dr. Khuri conducted the review of Plaintiff's appeal. (*Id.* at 344.) Dr. Khuri advised USG that Plaintiff should be sent for an independent medical examination ("IME"). On November 10, 2008, Dr. Michael Shear conducted the IME. (*Id.* at 494-499.) Dr. Shear reviewed Plaintiff's medical history and conducted a physical examination. Plaintiff informed Dr. Shear that he was in "constant pain" and could "sit for 2 hours, stand for 5 minutes and cannot walk." (*Id.* at 495.) Dr. Shear observed that Plaintiff was able to transfer from his wheel chair to the examining table unassisted. (*Id.*) Dr. Shear concluded that Plaintiff "has lost significant use of his right leg following his multiple surgical procedures." (*Id.* at 499.) The IME did not include an investigation of Plaintiff's employment or educational background. (*Id.* at 495.) However, Dr. Shear concluded that "he can work at a sedentary position which requires no standing or walking and requires lifting only in the sedentary category." (*Id.*)

Following Dr. Shear's report, USG forwarded a letter to Plaintiff affirming the denial of his disability benefits on December 9, 2008 ("Appeal Denial"). The Appeal Denial references the opinions of Dr. Shear and Dr. Khuri. (*Id.* at 491.) However, the Appeal Denial does not

3

address or even mention Dr. Conibear's conclusions or the Initial Denial. On April 9, 2009, Plaintiff commenced this action challenging USG's denial of disability benefits.

## II.    Standard of Review

Substantial compliance with the procedural requirements of ERISA and its implementing regulations is sufficient to uphold a plan administrator's decision. "Not all procedural defects will invalidate" a denial of benefits. *Brogan v. Holland*, 105 F.3d 158, 165 (4th Cir. 1997).

When considering the substantive validity of a decision, abuse of discretion is the appropriate standard of review.[2] Under an abuse of discretion standard, an administrator's decision will not be disturbed if it is reasonable, even if the court "would have come to a different result in the first instance." *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 322 (4th Cir. 2008); *see also Booth v. Wal-Mart Stores, Inc* 201 F.3d 335, 341 (4th Cir. 2000); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989). An administrator's decision is reasonable "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Evans*, 514 F.3d at 322 (quoting *Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 788 (4th Cir.1995)). Ultimately, a plan administrator must adhere to the text of ERISA and the plan to which they have contracted, base their decision on good evidence and

---

[2] The USG Plan authorizes the administrator to "determine in its discretion all questions arising under the plan, including the power to determine the rights or eligibility of employees or participants and their beneficiaries and the amount of their respective benefits under the plan, and to remedy ambiguities, inconsistencies or omissions." (USG.'s Mem., Ex. A at 87.) This language is sufficient to confer discretionary authority on the plan administrator. *See, e.g., Woods v. Prudential Ins. Co. of America*, 528 F.3d 320, 322 (4th Cir. 2008). The parties do not dispute that abuse of discretion is the appropriate standard of review. (*See* USG.'s Mem. at 12; Pl.'s Mem. at 11.)

4

sound reasoning, and reach their conclusion after a fair and searching process.[3] *See Evans*, 514 F.3d at 322-23.

### III. Plaintiff's Claim Regarding Appeal and Notice Requirements

Plaintiff's claim for benefits is to be remanded to the plan administrator because USG failed to comply with ERISA's appeal and notice requirements when it issued the Appeal Denial. USG's Appeal Denial was based on grounds separate and distinct from those in its Initial Denial and was therefore subject to ERISA's appeal and notice requirements. ERISA requires plan administrators to "provide adequate notice in writing to any participant or beneficiary whose claim for benefits . . . has been denied, setting forth the specific reasons for such denial." *See* 29 U.S.C. § 1133. Furthermore, the plan administrator must "afford a reasonable opportunity to any participant whose claim for benefits has been denied, a full and fair review by the appropriate named fiduciary of the decision denying the claim." *Id*.

In the instant case, Plaintiff never received a full and fair review of the Initial Denial. The Appeal Denial raised a new basis to deny the claim rather than reviewing the justification for the Initial Denial. The Initial Denial informed Plaintiff that he did not qualify for disability benefits because his condition "has not been in existence for 6 continuous months" and "some or all of the diagnoses cannot be reasonably expected to continue at the current level of severity for

---

[3] The Fourth Circuit has set forth a nonexclusive list of factors a court may consider when determining whether an exercise of discretion is reasonable: "[A] court may consider, but is not limited to, such factors as: (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decision making process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have." *Booth*, 201 F.3d at 342-43.

at least the next 60 months." (Def.'s Mem., Ex. A at 334.) The Appeal Denial did not address this conclusion and instead found that Plaintiff was capable of substantially gainful employment that does not require standing, walking, or lifting. (*Id.* at 491.)

Plaintiff is also entitled to a full and fair review of the Appeal Denial. The Appeal Denial rests on grounds never before considered and is therefore "an initial denial" subject to ERISA's notice and appeal requirements. *See Gagliano v. Reliance Std. Life Insur. Co.*, 547 F.3d 230, 236 (4th Cir. 2008); *see also* 29 C.F.R. 2560.503-(1)(h). In *Gagliano*, the Fourth Circuit confronted a similar factual situation in which a claimant was first denied benefits because she was not medically disabled, and then on appeal because a pre existing condition precluded her claim. *Gagliano*, 547 F.3d at 236. The Fourth Circuit concluded that the appeal decision was an "initial denial" on new grounds; therefore, Gagliano was statutorily entitled to the ERISA appeals process as to the reasons underlying the second denial. *Id.* In the instant case, Plaintiff was initially informed that duration was the issue, and later notified that severity precluded the claim. As a result, USG twice denied Plaintiff's claim without ever affording him an opportunity for a full and fair review of the specific reasons for which his claim was denied. *See* 29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1(h).

USG contends that it provided Plaintiff fair notice that he had to establish all criteria for disability benefits because the Initial Denial stated, "the participant is able to engage in substantially gainful activity in spite of the medical diagnosis." (USG.'s Mem. at 334.) For two reasons, this sentence does not alter the conclusion that the appeal decision was an initial determination on new grounds. First, ERISA requires "adequate notice . . . setting forth the specific reasons for . . . denial." 29 U.S.C. 1133. A mere recitation of the Plan's definition of disability is insufficient. Indeed, the specific reasons for denial provided in the letter focus only

6

on the duration of Plaintiff's injuries. Second, this conclusion in the denial letter is not the conclusion of USG's initial reviewer, Dr. Conibear. As originally reported by Dr. Conibear, this sentence read: "the participant is able to engage in substantially gainful activity in spite of the medical diagnosis. *Not applicable.*" (USG.'s Mem. at 330, (emphasis added).) A fair reading of the initial denial letter and an examination of Dr. Conibear's conclusions clearly indicate that Plaintiff's claim was initially denied only because his condition was not reasonably expected to continue.

The appropriate remedy for USG's procedural violation of ERISA's notice and appeal requirements is to remand Plaintiff's claim so that USG can provide the full and fair review to which Plaintiff is entitled. *See Sedlback v. Braswell Servs. Group Inc.,* 134 F.3d 219 (4th Cir. 1998) (concluding that defective notice to a plan participant could not create a substantive remedy); *see also Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1096 (9th Cir. 1985) ("A substantive remedy would be appropriate only if the procedural defects caused a substantive violation or themselves worked a substantive harm."). The result would be different if the record established that USG's denial of the claim was an abuse of discretion as a matter of law. *See Gagliano*, 547 F.3d at 240. After reviewing the administrative record of Plaintiff's claim, I cannot conclude as a matter of law that he is entitled to relief. Therefore, the case is remanded so that USG can provide a full and fair review of the grounds for denial specified in both the Initial Denial and Appeal Denial.

### IV. Plaintiff's Remaining Claims

While Plaintiff's claim for benefits is to be remanded for the reasons stated above, in the interest of judicial efficiency and to provide guidance to the parties on remand, I will address the

three primary arguments Plaintiff raises in support of his claim that USG violated ERISA. First, Plaintiff contends USG improperly denied Plaintiff an opportunity to respond to Dr. Shear's IME report before USG decided Plaintiff's appeal. Second, Plaintiff argues USG was required to conduct a vocational or functional capacity evaluation to assess what jobs, if any, Plaintiff was capable of performing. Third, Plaintiff argues USG provided insufficient notice in its Initial Denial.

First, ERISA generally does not require a plan administrator to provide a claimant the opportunity to provide "rebuttal evidence" to an IME report prior to rendering a decision on claimant's appeal. (Pl.'s Mem. at 13.) On appeal, federal regulations require only that a plan administrator provide reasonable access "upon request" to appellate level medical reviews *after* a determination has been made. 29 C.F.R. §§ 2560.503-1(h)(5), (j)(3); *Midgett v. Washington Group Int'l Long Term Disability Plan*, 561 F.3d 887, 894 (8th Cir. 2009).[4]

There is some support for the view that appeal level reports must be made available to a claimant before a decision is rendered, if the report analyzes evidence unknown to the claimant, or contains a novel diagnosis. *Metzger v. UNUM Life Insurance Co.*, 476 F.3d 1161, 1167-68 (10th Cir. 2007); *Skipp v. Hartford Life Ins. Co.*, 2008 WL 346107 (D. Md.). In *Skipp*, the court denied the plaintiff's request for remand, concluding that there was nothing in the appeal report that would have caught the claimant off-guard, "save perhaps for . . . [the] . . . ultimate conclusion." Similarly, in the instant case, only the IME's conclusion in the Appeal Denial would have surprised Plaintiff.

---

[4] This reading of the federal regulations comports with the Department of Labor's intent in promulgating them: "the required disclosure of relevant documents will serve the interests of both claimants and plans by providing clarity as to plans' disclosure obligations, while providing claimants with adequate access to the information necessary to determine whether to pursue further appeal." *Metzger*, 476 F.3d at 1167 (quoting ERISA Claims Procedure, 65 Fed.Reg. 70,246 (Nov. 21, 2000)).

Second, as both parties agree, ERISA does not impose a per se rule upon plan administrators to conduct a vocational or functional capacity evaluation prior to a denial of disability benefits. In deciding whether a vocational expert was necessary in the instant case, the court will look at the particular circumstances and determine whether substantial evidence supports the conclusion that the claimant is capable of substantially gainful employment. *See Piepenhagen v. Old Dominion Freight Line, Inc. Employee Benefit Plan*, 640 F. Supp. 2d 778, 789 (W.D. Va. 2009). Because the instant case is being remanded to develop the administrative record, a final decision on whether USG is required to conduct a vocational or functional capacity evaluation would be premature.[5]

Third, USG's initial denial letter met all applicable requirements of federal regulations, setting forth the specific reasons why the application was denied, referencing specific plan provisions, and providing all information necessary for Plaintiff to perfect his claim. *See* 29 C.F.R. § 2560.503-1(g)(1)(i)-(iv). Plaintiff's primary contention is that the letter fails to provide a description of any additional material or information necessary for Plaintiff to perfect his claim. 29 C.F.R. § 2560.503(1)(g)(1)(iii). While USG did not delineate the specific pieces of information necessary to prove a valid claim, the denial letter makes clear that "[d]ocumentation that maximum medical improvement has been achieved in this case is lacking." (USG Mem., Ex. A at 334.) Furthermore, the letter lists the specific factual determinations upon which this conclusion rests. Read in its entirety, the Initial Denial provided Plaintiff with all the information necessary to perfect his claim. Even if it could have been more explicit, the letter

---

[5] Plaintiff also contends that a vocational capacity evaluation is required because the Plan places the burden of proof on the Plan administrator. However, the clear language of the Plan places the burden on the claimant. The Plan states that "the Committee shall have the responsibility for determining whether a participant has incurred a total and permanent disability and . . . may require reasonable proof of such disability." (USG Mem., Ex. A at 40.) In *Elliot v. Sara Lee Corporation*, 190 F.3d 601, 603, n.2 (4th Cir. 1999) the Court considered similar language and concluded that the burden of proving disability is on the employee.

9

complied with ERISA's notice requirements. *See, e.g., Brogan*, 105 F.3d at 165 (noting that substantial compliance is all that is required to satisfy ERISA's procedural requirements).

### V.     Conclusion

For the forgoing reasons, Defendant's motion for summary judgment and Plaintiff's cross motion for summary judgment are denied. Plaintiff's claim is remanded to the plan administrator for a full and fair review under ERISA regarding the basis for denial of benefits in the Initial Denial and the Appeal Denial. Commensurate with 29 C.F.R. § 2560.503-1(i), USG shall notify Plaintiff of its benefits determination within sixty days of the entry of this decision. A separate order to that effect is being entered herewith.

DATE:  5/14/2010                              __/s/_____
                                                              J. Frederick Motz
                                                              United States District Judge